UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY KEITH McCORKLE,

    Petitioner,

    v.

SPEARMAN,

    Respondent.

No. 2:16-cv-2368-JAM-EFB P

FINDINGS AND RECOMMENDATIONS

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 12, 2014, he was convicted in the Placer County Superior Court of: (1) two counts of attempted first degree residential burglary (Pen. Code, § 459); (2) unlawful taking of a vehicle (Cal. Veh. Code §10851(a)); (3) evading an officer (Cal. Veh. Code § 2800.2);[1] and (4) misdemeanor resisting a peace officer (Pen. Code § 148). Petitioner raises the following claims in the instant petition: (1) there was insufficient evidence to support the residential burglary conviction; (2) the trial court erred in giving a jury instruction pursuant to CALCRIM No. 376; and (3) the trial court abused its discretion in denying his Romero[2] motion and refusing to strike one or more of his previous convictions. For the reasons stated hereafter, the petition must be denied.

---

[1] Petitioner entered a no-contest plea to the charge of evading an officer.

[2] *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (Cal. 1996).

1

BACKGROUND

I.   Prosecution Case

    A.   Burglary at the Hernandez Residence

In the early morning hours of November 15, 2011, Alice Hernandez heard the back door of her house close. She initially thought her husband, Atancio, had left the residence, but he remained in bed. Ms. Hernandez discovered the back door unlocked and promptly locked it.

Later that morning, a police officer knocked on the Hernandezes' front door, inquired whether they were victims of a burglary, and asked the couple to check whether any belongings were missing. Alice Hernandez discovered that her purse – in which she kept her credit cards, driver's license, and automobile insurance card – was missing. Atancio found that his wallet was missing.

    B.   Theft of Andrew Larsen's Truck

At about 1:30 a.m. on November 15, 2011, Andrew Larsen woke to the sound of his pickup truck motor starting. He peered out his front window and witnessed someone driving away in the truck. Larsen borrowed a roommate's vehicle and gave chase while simultaneously contacting the Roseville Police Department. Soon, the stolen pickup was being pursued by police units. The chase proceeded, sometimes at high speeds, into Citrus Heights. There, the pickup collided with part of a telephone pole. The thief – whom a Roseville Police detective described as dressed in a black sweatshirt with a white logo, black pants with a red marking, and a black beanie – opened the driver's door and fled the scene.

Pursued on foot by police, the thief fled into a nearby backyard. Police set a perimeter and a canine soon located petitioner hiding in the bushes in front of a nearby residence. A pair of gloves and a black beanie were also found in the bushes. Petitioner's clothing matched the description of the pickup truck thief. A search of his person uncovered a cell phone, a screwdriver, and a small metallic container which contained a "AAA" insurance card issued to Alice Hernandez.

Later that morning, a resident who lived near the location where petitioner was apprehended found a black backpack near her garbage cans. She reported the find to the police,

and a search of the backpack revealed Atancio Hernandez's wallet, Alice Hernandez's purse, and a flashlight.

      II.      <u>Defense Case</u>

Petitioner argued that he was a long-time drug addict who, due to his financial struggles, had started dealing drugs. On the night of November 14, 2011, petitioner's wife drove him to Roseville between eleven and midnight. Petitioner stated that he met a number of unnamed individuals in a 7-11 parking lot for a drug transaction. He gave these individuals a gram of heroin and, in exchange, received a purse, a wallet, a black backpack, a metallic cardholder, and a flashlight from the trunk of their car.

With respect to the truck, petitioner testified that he had previously completed a drug deal with Andrew Larsen. He stated that Larsen had provided him with keys to the pickup truck as collateral in the deal. After the deal in the 7-11 parking lot, petitioner went to retrieve the truck.

      III.      <u>Trial Outcome</u>

Petitioner was convicted of: (1) two counts of attempted first degree residential burglary (Pen. Code, § 459); (2) unlawful taking of a vehicle (Cal. Veh. Code §10851(a)); (3) evading an officer (Cal. Veh. Code §2800.2); and (4) misdemeanor resisting a peace officer (Pen. Code § 148). Petitioner was also alleged to have prior convictions: (1) two "strike" priors, within the meaning of § 667(b) – (i) and 1170.12 (a) – (d); (2) two serious felony priors within the meaning of § 667(a)(1); and (3) five prior prison terms within the meaning of § 667.5(b). While the jury was deliberating, petitioner waived his right to a jury trial on the prior conviction allegations. As noted above, the jury found petitioner guilty as charged, and the court found true the prior conviction allegations.

      IV.      <u>Post-Conviction Proceedings</u>

On direct appeal, the court of appeal stayed petitioner's sentence for resisting an officer and struck a one-year prior prison term enhancement after finding that both the prison term enhancement and a prior serious felony conviction enhancement were based on the same burglary conviction. It affirmed the judgment against petitioner in all other respects.

/////

3

| | |
|---|---|
|1| Petitioner sought review from the California Supreme Court. That court issued a |
|2| summary denial of his claims. |

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

/////

A.  "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

B.  "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[3] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[4] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[5] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). The question at this stage is whether the state court

---

[5] *Faretta v. California*, 422 U.S. 806 (1975).

6

reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 182.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 562 U.S. at 101-102.

      C.      <u>"Unreasonable Determination Of The Facts"</u>

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section

2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II.     The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the § 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure

8

to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

### I. Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to support his burglary conviction.

#### A. Last Reasoned Decision

Petitioner presented this claim on direct appeal and it was denied on the merits by the Court of Appeal in a reasoned decision. Lodg. Docs. 1 & 2. It was then presented to the California Supreme Court, which summarily denied it. Lodg. Docs. 3 & 4. The last reasoned decision belongs to the Court of Appeal which held:

> Defendant argues there is insufficient evidence to support his conviction for burglary. Specifically, defendant contends, "The record does not provide evidence from which a reasonable trier of fact could find beyond a reasonable doubt that [defendant] was the burglar." We disagree.
>
> When considering a challenge to the sufficiency of evidence supporting a conviction, we must "'review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" (*People v. Jennings* (1991) 53 Cal.3d 334, 364.) Even where the evidence of guilt is primarily circumstantial, the standard of appellate review is the same. (*People v. Holt* (1997) 15 Cal.4th 619, 668 [" ' " 'If the circumstances reasonably justify the [jury's] findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment' " ' "].) To succeed under a substantial evidence review, the defendant must

establish that no rational jury could have concluded as it did—it does not matter that "the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime." (*People v. Hill* (1998) 17 Cal.4th 800, 849; *see People v. Hovarter* (2008) 44 Cal.4th 983, 1015 [" ' "An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise" ' "].)

"When, as here, a defendant is found in possession of property stolen in a burglary shortly after the burglary occurred, the corroborating evidence of the defendant's acts, conduct, or declarations tending to show his guilt need only be slight to sustain the burglary convictions." (*People v. Mendoza* (2000) 24 Cal.4th 130, 176.) "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754.) Corroborating circumstances "need not be sufficient to prove guilt by [themselves]" (*People v. Moore* (2011) 51 Cal.4th 1104, 1131 (*Moore* )) and may include "[f]light, false statements showing consciousness of guilt or as to how the property came into defendant's possession, assuming a false name, [or] inability to find the person from whom defendant claimed to have received the property...." (*People v. Taylor* (1935) 4 Cal.App.2d 214, 217 (Taylor ), disapproved on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 863.) "And when defendant makes an explanation as to the manner in which he came into possession of such stolen property, the question as to whether he is telling the truth in that regard rests solely with the jury." (*Taylor*, *supra*, at pp. 217–218.)

With these guidelines in mind, we conclude the prosecution presented more than enough corroborating evidence to connect defendant to the burglary. The evidence shows that defendant led police on a high-speed chase originating approximately 1.3 miles from the Hernandez residence. He was found hiding in the bushes, wearing dark clothing, with a black beanie and gloves nearby. He was carrying a screwdriver. He discarded a backpack containing Atancio Hernandez's wallet, Alice Hernandez's purse, and a flashlight in Cleghorn's backyard. He told Detective Dutto that he was "just a stupid burglar." On this record, the jury could reasonably conclude beyond a reasonable doubt that defendant entered the Hernandez residence with intent to steal. The jury was free to reject defendant's explanation that he acquired the Hernandezes' personal property in a drug deal. We are not empowered to override the jury's reasonable conclusion. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' "].) We therefore reject defendant's challenge to the sufficiency of the evidence.

*People v. McCorkle*, 2015 WL 5681894, at *5–6 (Cal.App. 3 Dist., 2015) (Lodg. Doc. 2).

/////

10

B. <u>Clearly Established Federal Law</u>

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. *United States v. Winship*, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." *Id.* at 326. A jury's credibility determination is not subject to review during post-conviction proceedings. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."). The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

C. <u>Objective Reasonableness Under § 2254(d)</u>

The court of appeal's determination that sufficient evidence supported the burglary conviction was not unreasonable. At trial, one of the officers who pursued the stolen pickup truck identified petitioner as the driver. Reporter's Transcript, Vol. I, at 72-73. The officer also testified that, when petitioner was apprehended, he was in possession of a screw driver and a metal container wherein Alice Hernandez's insurance card was found. *Id.* at 77. Testimony was offered that a screw driver can be a burglary tool used to defeat locks or break open windows. *Id.* at 85. Finally, a backpack containing other stolen items was found near the location where petitioner was apprehended. *Id.* at 182-84, 222-24.

Respondent argues that the crux of this claim is petitioner's contention that his burglary conviction must be based on more than proof that he possessed stolen property. There is, however, no clearly established federal law specifically requiring this heightened level of proof in such cases. To the contrary, the Supreme Court has held "if property recently stolen be found in the possession of a certain person, it may be presumed that he stole it, and such presumption is sufficient to authorize the jury to convict, notwithstanding the presumption of his innocence."

11

*Dunlop v. United States*, 165 U.S. 486, 502 (1897). Moreover, the jurors in this case were instructed pursuant to CALCRIM No. 376 that:

> If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of residential burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed residential burglary.
>
> The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of residential burglary.
>
> Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.

Clerk's Transcript on Appeal, Vol. I, at 177-78. Jurors are presumed, absent evidence to the contrary, to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). And there was, as the court of appeal found, sufficient corroborating evidence to convict. For example: (1) petitioner led police on a high-speed chase; (2) he fled from the crashed truck and was found in bushes wearing dark clothing; and (3) he was carrying a screwdriver which could be used as a burglary tool. Thus, this claim fails.

## II. Instructional Error

Petitioner argues that the trial court erred in instructing the jury under CALCRIM No. 376 (the language of which is represented in the foregoing section). Specifically, he claims that this instruction "allowed the jury to cross-reference evidence from count two, vehicle theft, to count one, residential burglary." ECF No. 21 at 4.

### A. Last Reasoned Decision

The court of appeal denied this claim on direct appeal:

> Defendant contends the trial court erred in instructing the jury pursuant to CALCRIM No. 376. Specifically, defendant contends the instruction allowed the jury to infer guilt on the burglary charge from defendant's possession of Larsen's truck. We are not persuaded.
>
> We review de novo whether jury instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) When reviewing a claim that the court's instructions were misleading or ambiguous, we

> inquire whether there is a reasonable likelihood the jury misunderstood and misapplied the instructions. (*Moore*, *supra*, 14 Cal.4th at p. 1140.) We consider the instructions as a whole and the entire record of trial, including the arguments of counsel. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 708 (*Lopez* ).) "We assume that the ' " 'jurors [were] intelligent persons and capable of understanding and correlating all jury instructions ... given.' [Citation.]" [Citation.]' [Citation.] Instructions should be interpreted, if possible, to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation. [Citation.]" (*Ibid.*)
>
> We perceive no reasonable likelihood that the jury misunderstood or misapplied CALCRIM No. 376. The jury was separately instructed on the elements of burglary and unlawfully taking a vehicle. The jury was also instructed that, "[e]ach of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." The prosecutor's closing arguments made clear that defendant's possession of recently stolen property from the Hernandez residence, coupled with other corroborating evidence, constituted circumstantial evidence of burglary.
>
> There is nothing in the record to suggest that the jury viewed CALCRIM No. 376 as an invitation to "mix and match" the evidence, borrowing evidence of one crime to infer guilt of another. If anything, CALCRIM No. 376 reduces the risk of juror confusion. As the *Lopez* court observed, "CALCRIM No. 376 cautions the jury against inferring guilt based solely upon a defendant's conscious possession of recently stolen goods. It would be unreasonable and illogical for the jury to construe this instruction to also permit it to infer guilt on a burglary charge, because a defendant possessed property stolen during a completely different theft. ' "We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions. [Citations.]" [Citation.]' " (*Lopez*, *supra*, 198 Cal.App.4th at p. 710.) There is nothing in the record to suggest that the jury misunderstood or misapplied CALCRIM No. 376. We therefore reject defendant's claim of instructional error.

*McCorkle*, 2015 WL 5681894, at *6 (Lodg. Doc. 2).

### B. Clearly Established Federal Law

Jury instructions are generally matters of state law and, as such, federal courts are bound by a state appellate court's determination that a particular instruction was warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment."

*Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotations omitted). A challenge to a trial court's jury instructions is reviewed under the standards in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) – that is, whether the error had a "substantial and injurious effect in determining the jury's verdict." *See California v. Roy*, 519 U.S. 2, 5 (1996).

        C.      Objective Reasonableness Under § 2254(d)

The court of appeal's rejection of this claim was not unreasonable. As it noted, the jury was instructed that "[e]ach of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." Clerk's Transcript on Appeal, Vol. I, at 183. Moreover, CALCRIM No. 376 warns jurors not to infer guilt based solely on a defendant's knowing possession of stolen goods. *Id.* at 177-78. And, again, juries are presumed to follow their instructions. *Marsh*, 481 U.S. at 211. There is no record evidence that the jury ignored the trial court's instructions and concluded that possession of Larsen's truck was sufficient to prove that petitioner burglarized the Hernandez residence. This claim should also be denied.

    III.    Denial of *Romero* Motion

Finally, petitioner argues that the trial court abused its discretion in denying his *Romero* motion and refusing to strike one or more of his prior strike convictions.

        A.      Last Reasoned Decision

The court of appeal denied this claim on direct appeal:

> Next, defendant contends the trial court abused its discretion in denying his motion to strike one or more of his prior strike convictions. We disagree.
>
> Section 1385 gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. (§ 1385, subd. (a).) In Romero, the California Supreme Court held that a trial court may use section 1385 to strike or vacate a prior strike for purposes of sentencing under the "Three Strikes" law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra*, 13 Cal.4th at p. 504.) Thus, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony* ).)

In ruling on a Romero motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams* ).)

Dismissal of a strike is a departure from the sentencing norm. Therefore, in reviewing a Romero decision, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) Reversal is justified where the trial court was unaware of its discretion to strike a prior strike or refused to do so for impermissible reasons. (*Id.* at p. 378.) But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (Ibid.)

Defendant contends the trial court failed to give due consideration to the nonviolent nature of the current offenses. However, the fact that the current offenses were nonviolent does not mandate the granting of a Romero motion. (*See People v. Strong* (2001) 87 Cal.App.4th 328, 344 [reversing order granting Romero motion based on nonviolent nature of current offense because "the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of the law"]; *see also People v. Poslof* (2005) 126 Cal.App.4th 92, 108–109 [even though current crime of failing to register as sex offender was nonviolent, denial of the Romero motion was not an abuse of discretion]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 (*Gaston* ) [although current crime of car theft was "not as serious as many felonies," it was "far from trivial"].) Furthermore, defendant's current offenses, though nonviolent, were nonetheless quite serious. (*Id.* at p. 315; *see also* § 1192.7, subd. (c)(18).) Defendant broke into the Hernandez residence in the middle of the night, stole a truck, and led police on a high-speed chase through Citrus Heights. Though no one was hurt, defendant endangered his victims and an entire community. Thus, the fact that defendant's current offenses were nonviolent does not take him outside of the spirit of the Three Strikes law.

Defendant also argues that the trial court failed to give due consideration to the fact that his prior strike convictions "took place in 2000 and 1996, and are thus remote in time." However, defendant was in prison from 2000 through 2008. He was convicted of second degree burglary in 2009 and sent back to prison. He committed the current offenses within months of his release. As the trial court observed, "on each one of the times he committed the previous offenses, he was on parole or probation and was on parole or probation when he committed this offense." On this record, defendant can hardly be said to have been crime free, and his prior strike convictions cannot be considered "remote." (*See Williams, supra*, 17 Cal.4th at p. 163 [13 years between prior and current felony

15

"not significant" because the defendant did not refrain from criminal activity]; *People v. Philpot* (2004) 122 Cal.App.4th 893, 906; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

Defendant also argues that the trial court failed to fully consider his drug addiction. "However, drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511.) Here, the record indicates that defendant, age 36, has been abusing drugs since he was a teenager. Although defendant appears to have participated in some form of mandatory drug counseling as a juvenile, there is nothing in the record to suggest that he has ever sought treatment for drug addiction, despite his history of drug-related offenses. On this record, the trial court could reasonably conclude that defendant's prolonged drug abuse, and his failure to seek treatment for more than 20 years, suggest that his prospects for rehabilitation are bleak. (*Gaston*, *supra*, 74 Cal.App.4th at p. 322; Martinez, supra, at p. 1511; *see also In re Handa* (1985) 166 Cal.App.3d 966, 973–974 ["Drug use or drug addiction at the time of an offense is an example of a disputable factor in mitigation. The sentencing court may find that drug use did not significantly affect the defendant's capacity to exercise judgment or, in the case of an addiction of long standing, that the defendant was at fault for failing to take steps to break the addiction"].)

Relying on *People v. Howard* (1993) 17 Cal.App.4th 999 (*Howard*), defendant also argues that the trial court improperly considered "the fact that he testified falsely in front of the jury." In Howard, the Court of Appeal held that "when imposing an aggravated sentence on the ground the defendant committed perjury at trial, the sentencing court is constitutionally required to make on-the-record findings as to all the elements of a perjury violation." (*Id.* at p. 1001.) Howard found the trial court failed to make the required findings, but deemed the error harmless beyond a reasonable doubt because, given the conflicting testimony at trial, "the court's own conclusion that there was perjury ... could only have been based on a finding that Howard had been untruthful. There was no other basis for rejecting his testimony." (*Id.* at p. 1005.)

Unlike the present case, Howard involved a discretionary sentencing choice which required a statement of reasons and resulted in the imposition of an aggravated sentence. (*Howard*, *supra*, 17 Cal.App.4th at p. 1005.) By contrast, "'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclude[s] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Moreover, "section 1385, subdivision (a), requires trial courts to state reasons for granting a motion to strike [citations], but not for declining to strike a strike." (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 960.) Here, the court did not aggravate or enhance defendant's sentence when it decided that defendant did

16

> not fall outside the Three Strikes law. The court was not required to state its reasons for maintaining the status quo although, having chosen to do so, it was required to rely on legitimate reasons. Case law establishes that a trial court may legitimately rely on the defendant's perceived untruthfulness at trial as a basis for drawing negative inferences about his "character and prospects for rehabilitation." (*People v. Redmond* (1981) 29 Cal.3d 904, 913.) In light of these considerations, we conclude that the trial court was entitled to rely on defendant's perceived untruthfulness at trial, and was not required to make express findings on the elements of perjury. Finally, defendant observes he "would still get a lengthy sentence if the court struck one of the priors and a determinate sentence for residential burglary were doubled." Defendant's observation, while arguably true, amounts to an invitation for us to second guess the trial court and substitute our own opinion as to leniency, which we cannot do. (*Williams, supra*, 17 Cal.4th at pp. 158–161.) There is no indication the trial court failed to consider any of the mitigating factors presented in connection with defendant's Romero motion. Accordingly, we conclude there was no abuse of discretion.

*McCorkle*, 2015 WL 5681894, at *6–8 (Lodg. Doc. 2).

### B. Clearly Established Federal Law

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)(internal citations omitted). And, generally, a challenge to a state court's application of state sentencing laws does not give rise to a federal question cognizable on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). To assert a cognizable federal habeas claim based on a state court sentencing error, a habeas petitioner must demonstrate that the sentencing error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992).

### C. Objective Reasonableness Under § 2254(d)

This claim must be rejected because this court must defer to the state court of appeal's interpretation of state law. *See Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Here, the state court held that there was no abuse of discretion in the trial court's denial of petitioner's *Romero* motion. The absence of a state law error necessarily precludes an analysis of whether such error was "arbitrary or capricious." Finally, petitioner may not attack the denial of his *Romero* motion in a federal

habeas petition simply by stating that the denial violated his federal due process rights. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)(a petitioner "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process").

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 29, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE